UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JULIE MUNCY, *et al.*,
      Plaintiffs,

vs.

UNITED STATES LIABILITY,
INSURANCE COMPANY,
      Defendant.

Case No. 1:13-cv-830

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

     Plaintiffs, Julie Muncy and Stephen Muncy, doing business as Divide Carry Out, bring this diversity action pursuant to 28 U.S.C. § 1332 against defendant United States Liability Insurance Company (USLIC), alleging Ohio state law claims of breach of contract, lack of good faith, reasonable expectations of coverage, and waiver-promissory estoppel-equitable estoppel, and seeking declaratory relief or, alternatively, reformation of their insurance contract with USLIC. (Doc. 18, Plaintiff's Amended Complaint). This matter is before the Court on the parties' cross-motions for summary judgment[1] (Docs. 24, 28), their responses in opposition (Docs. 32, 33), and their respective reply memoranda (Docs. 34, 38).

**I. Background**

     The following facts were taken from the evidence submitted by both parties in connection with their summary judgment motions and are undisputed unless otherwise noted.

     In 2008, plaintiffs purchased the Divide Carry Out, a small convenience store business in Portsmouth, Ohio. Plaintiffs retained the prior owner's security system, which was installed and managed by Tri-State Security Systems. The security system included a panic button, keypad, and motion detectors. On May 17, 2011, Julie Muncy signed an insurance application seeking coverage from USLIC for the Divide Carry Out. In the application submitted by Julie Muncy, it

---

[1]USLIC's motion is both a partial motion for summary judgment under Fed. R. Civ. P. 56(c) and a partial motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Doc. 28 at 1.

is represented that the Divide Carry Out had functioning and operational smoke and/or heat detectors.

On May 19, 2011, USCLIC issued an insurance policy to Julie Muncy doing business as Divide Carry Out for the period of May 17, 2011, to May 17, 2012. The insurance policy requires the insured to "have and maintain . . . [f]unctioning and operational smoke/heat detectors. . . ." (Doc. 37, Ex. 7 at 57, Protective Devices or Services Provisions, Form BP-115 (07-08)). The policy also includes exclusionary terms which provide that USLIC "will not pay for loss or damage caused by or resulting from fire if, prior to the fire, [the insured]:

> p. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
>
> q. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

(*Id*. at 58).[2] The Schedule referenced contains the symbol "P-5," which is described as "Functioning and operational smoke/heat detectors in all units or occupancies." (*Id*. at 57).

David Frey, an employee of ISI Insurance Services, performed a field inspection of the Divide Carry Out on behalf of USLIC on June 13, 2011. (Doc. 25, ¶ 1-2, Affidavit of David Frey). Pursuant to his inspection, Mr. Frey completed a USLIC Grocery, Deli, and Convenience Risk Inspection Report. (*Id*., Ex. A; Doc. 37, Ex. 6). Mr. Frey checked the "Yes" box on the form in response to the question "Are there functioning and operational smoke/heat in [the areas] which you have physically inspected?" (*Id*.).

A fire occurred at the Divide Carry Out on November 22, 2011. Plaintiff Julie Muncy subsequently filed a claim with USLIC. On August 12, 2013, USLIC denied the claim for damages resulting from the fire loss due to plaintiffs' "failure to comply with the policy's

_____

[2] The policy provides that these terms are "added to Paragraph B. Exclusions in Section I – Property." *See* Doc. 37, Ex. 7 at 58.

2

'Protective Safeguards Endorsement' (BP-115 (07-08)) and the lack of functioning and

operational smoke/heat detectors in the insured premises." (Doc. 37, Ex. 8 at 1-2, August 12,

2013 USLIC Denial Letter).

 As a result of USLIC's denial of coverage, plaintiffs filed the instant lawsuit claiming

USLIC breached the insurance contract between the parties.  Plaintiffs allege that their security

system's motion detectors work by sensing heat and qualify as "heat detectors" for purposes of

the insurance contract.  Accordingly, plaintiffs contend they were in compliance with their

contractual obligations to USLIC and they seek enforcement of the insurance policy with respect

to their economic losses resulting from the November 2011 fire at the Divide Carry Out.  (Doc.

18).

## II. Summary Judgment Standard

 A motion for summary judgment should be granted if the evidence submitted to the Court

demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Under Federal Rule

of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

of law."  *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002).  The Court must evaluate

the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving

party.  *Satterfield,* 295 F.3d at 615; *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475

U.S. 574, 587 (1986); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir.

2000).

3

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## III. Resolution

Plaintiffs move for summary judgment on the issue of whether they are entitled to insurance coverage for the loss caused by the November 2011 fire at the Divide Carry Out. Plaintiffs contend that contrary to USLIC's stated reason for denying coverage, they were in compliance with their obligations under the insurance policy as the motion detectors that were part of the security system at the Divide Carry Out qualify as heat detectors under the Protective Devices or Services Provisions of the contract. Plaintiffs assert the undisputed evidence establishes that these motion detectors function by sensing infrared waves, i.e., heat waves, and are therefore heat detectors as the term is commonly understood. Plaintiffs note that the term "heat detector" is not defined in the insurance policy and therefore it must be liberally construed in favor of coverage under Ohio contract law.   In the event the Court concludes the motion detectors are not "heat detectors" for purposes of coverage under the insurance policy, plaintiffs argue they are nevertheless entitled to summary judgment because the exclusions cited by

4

USLIC, paragraphs (p) and (q) quoted above, as the bases for denying coverage do not apply given the facts of this case. Plaintiffs further argue that USLIC is estopped from denying coverage under these exclusions because USLIC's own inspector certified that there were smoke or heat detectors at the Divide Carry Out and plaintiffs relied on this finding in maintaining their security system as they believed it satisfied their contractual obligations to USLIC. Lastly, plaintiffs request that the Court exercise its equitable jurisdiction to reform the insurance policy in favor of coverage in the event the Court finds their insurance claim is not covered for the reasons previously stated. (Doc. 24).

USLIC moves for partial summary judgment[3] in its favor and alleges that plaintiff Julie Muncy is not entitled to coverage for the fire loss at the Divide Carry Out because she breached the contract by failing to maintain functioning and operational smoke or heat detectors at the business. USLIC disputes that the motion detectors at the Divide Carry Out qualify as heat detectors under the insurance policy because this interpretation would be inconsistent with the parties' intent in forming the contract, which USLIC asserts was to ensure the existence of a fire alarm device on the insured premises. USLIC contends that the Court must apply the common and ordinary meaning of the term "heat detector" and that plaintiffs' interpretation that the motion detectors are "heat detectors" is "patently ludicrous." USLIC supports its interpretation by citing to the deposition testimony of Karen Gorski, USLIC's corporate representative and Vice President of its Midwest Regional Commercial Lines Team. In the event the Court finds the motion detectors constitute "heat detectors" under the policy, USLIC contends it is nevertheless entitled to summary judgment because the motion detectors did not function or

---

[3] USLIC moves for summary judgment on plaintiffs' breach of contract, reasonable expectations of coverage, and promissory estoppel-waiver-equitable estoppel claims as well as their requests for declaratory relief and reformation of the insurance contract (Counts I-II, IV-6 of the amended compliant); USLIC's motion is silent with respect to Count III of plaintiff's complaint – plaintiffs' "Lack of Good Faith" claim. (Doc. 28).

operate to detect the fire at the Divide Carry Out and, therefore, plaintiffs failed to satisfy their contractual obligation of having "functioning and operational" smoke or heat detectors. Lastly, USLIC argues it is entitled to summary judgment on Count VI of plaintiffs' amended complaint – the reformation claim – because under Ohio law, a Court may only reform a contract to express the true agreement between the parties where there is clear and convincing evidence of a mutual mistake regarding a material term of the contract. USLIC asserts that the undisputed facts here do not support a finding of mutual mistake as it was always USLIC's intent to ensure that there were functional smoke detectors at the Divide Carry Out. Because the reformation sought by plaintiffs runs contrary to this intent, USLIC contends reformation by the Court would be impermissible. (Doc. 28 at 1-10, 12-14).

USLIC also moves under Fed. R. Civ. P. 12(b)(6) to dismiss Counts IV and V of plaintiffs' amended complaint – the reasonable expectation of coverage and promissory estoppel-waiver-equitable estoppel claims. USLIC contends plaintiffs' amended complaint fails to allege sufficient facts to support these claims, such as facts alleging that plaintiffs detrimentally relied on USLIC's actions. USLIC likewise contends the claims must be dismissed because they are precluded under Ohio law, which prohibits application of estoppel and waiver doctrines to expand the coverage of an insurance policy. (*Id*. at 10-12).

USLIC further argues that regardless of the Court's findings on the above issues, plaintiff Stephen Muncy's claims against it must be dismissed for lack of standing as Mr. Muncy is not a party to or a third-party beneficiary of the insurance contract at issue. (*Id*. at 14). The Court will first address USLIC's challenge to Stephen Muncy's standing.

A. Whether Stephen Muncy has standing to sue to enforce the insurance contract.

Citing to the insurance application and contract stipulated to by the parties, USLIC claims

that because Stephen Muncy is not identified as an insured or third-party beneficiary on either document, his claims against USLIC must be dismissed for lack of standing.  (Doc. 28 at 2-3, 14, citing Doc. 37, Exhs. 3, 7).  Plaintiffs provide no response in opposition to USLIC's standing argument.  The Court agrees with USLIC's unrebutted challenge to Stephen Muncy's standing.

The undisputed evidence stipulated to by the parties establishes that Stephen Muncy lacks standing to enforce the insurance contract between plaintiff Julie Muncy and USLIC.  As stated by USLIC, the insurance application submitted by Julie Muncy includes no reference whatsoever to Stephen Muncy; the application is signed only by Julie Muncy; and the "Additional Interests" identified in the application are limited to mortgagees American Savings Bank and Southern Ohio Growth Partnership.  *See* Doc. 37, Ex. 3.  The insurance contract itself lists only "Julie Muncy DBA: Divide Carry Out" as the named insured.  *See* Doc. 37, Ex. 7 at 2.  Likewise, the USLIC Inspection Report identifies only plaintiff Julie Muncy as the insured.  *See* Doc. 37, Ex. 6 at 1, 7.

"Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio."  *Mergenthal v. Star Banc Corp*, 701 N.E.2d 383, 385 (Ohio Ct. App. 1997) (citing *Thornton v. Windsor House, Inc.*, 566 N.E.2d 1220, 1223 (Ohio 1991)).  "It is well-established that a contract is binding only upon the parties to the contract and those in privity with them and that an action for breach of contract can only be maintained by the parties to the contract or those deriving rights from the contracting parties."  *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.*, 608 N.E.2d 830, 833 (Ohio Ct. App. 1992).  "Further, even though a person owns a property insured by another, ownership of the property does not automatically grant the owner an interest in the insurance policy."  *Mergenthal*, 701 N.E.2d at 385 (citing *Asmaro v. Jefferson Ins. Co. of New York*, 574 N.E.2d 1118, 1120-21 (Ohio Ct. App. 1989)).

7

Here, plaintiffs have put forth no evidence showing that Stephen Muncy has standing to enforce the insurance contract between Julie Muncy and USLIC. Plaintiffs do not dispute that the insurance policy does not name Stephen Muncy as an insured or a third-party beneficiary. Even assuming Stephen Muncy is a part-owner of the Divide Carry Out, he lacks standing to sue to enforce the policy absent a designation as a party to or beneficiary of the insurance policy. *See Mergenthal*, 701 N.E.2d at 385; *Am. Rock Mechanics*, 608 N.E.2d at 833. Accordingly, Stephen Muncy's claims against USLIC must be dismissed.

The Court now turns to the crucial issue presented by this case – whether the Divide Carry Out's motion detectors qualify as "heat detectors" under the terms of the insurance contract between Julie Muncy and USLIC.

B. <u>Whether the motion detectors at the Divide Carry Out qualify as "heat detectors" under the insurance contract.</u>

Plaintiffs submit they are entitled to summary judgment on their breach of contract claim and claim for coverage under the insurance policy because the undisputed evidence establishes they were in compliance with the terms of the policy as the motion detectors at the Divide Carry Out were "heat detectors." (Doc. 24 at 8-10). In support, plaintiffs cite to Ms. Gorski's deposition testimony that USLIC uses the "common definition of . . . heat detectors," which is "something that detects heat," for purposes of determining whether a safeguard device comports with their insurance policy guidelines. (*Id.*, at 8-9, citing Doc. 35 at 57-58). Plaintiffs further cite to the affidavit and expert opinion report of Daryl L. Ebersole, P.E., an electrical engineer who determined that the motion detectors at the Divide Carry Out[4] functioned by using infrared technologies. (*Id.* at 9, citing Doc. 22). Mr. Ebersole's report provides:

---

[4]"The manufacturer of the detector is Rokonet Electronics Ltd. The model number is COSMOS-DT. A document by Rokonet identifies that this model uses 'infrared,' 'IR', and 'PIR' [Passive Infrared] technologies." (Doc. 22 at 7, Mr. Ebersole's Expert Report).

> Infrared waves are sometimes called heat waves and they have wavelengths that are longer than that of visible light. The waves are not visible but PIR sensors react to these electromagnetic radiation waves which result from the heat emitted from objects in their view. The sensor can detect a difference in temperature between various objects in its field of view. When a contrast occurs between an object that gives off more heat than one that is at the ambient temperature the PIR detector reacts to this contrast. . . . [T]he Rokonet PIR detectors work on a principle of heat detection.

(Doc. 22 at 7). In the findings portion of the report, Mr. Ebersole concludes as follows:

> 1. The Rokonet Electronics Ltd. COSMOS-DT detectors that were part of the alarm system at the Divide Carry Out Restaurant use passive infrared technology (PIR).
>
> 2. Infrared waves are sometimes called heat waves and they are produced by heated objects.
>
> 3. The detectors function by sensing the thermal radiation which is emitted as a result of heat. Therefore, *the detectors react to and sense heat.*

(*Id*. at 8) (emphasis added). Plaintiffs further support their position that the motion sensors qualify as "heat detectors" under USLIC's insurance policy by citing to the compliance inspection report completed by Mr. Frey on behalf of USLIC wherein he documented there were "functioning and operational smoke/heat [detectors]" at the Divide Carry Out. (Doc. 24 at 9, citing Doc. 37, Ex. 6 at 1). Plaintiffs conclude that because the insurance policy does not define the term "heat detector," Ohio law requires that the Court give the term its plain and ordinary meaning under Ohio law, i.e., something that detects heat, and, further, that the term must be construed liberally and in their favor. (*Id*. at 10).

USLIC argues that plaintiffs' interpretation of the motion detectors as "heat detectors" disregards the parties' plain intent in entering into the insurance contract and "requires substitution of the common and ordinary meaning of the term . . . for a definition literally invented by [p]laintiffs and their counsel." (Doc. 28 at 6-7). USLIC asserts that "[t]he common and ordinary meaning of 'heat detector' is a fire alarm device." (*Id*. at 7). USLIC notes that Ms.

Gorski's deposition testimony supports this interpretation because she testified that "the intent of requiring smoke/heat detectors is to deal with fires." (*Id.*).  USLIC also cites to the language of the policy, noting that the "exclusion itself concerns damages caused by fire[.]" (*Id.*, citing Doc. 37, Ex. 7 at 57).  USLIC argues that plaintiffs' attempt to qualify the motion detectors at the Divide Carry Out due to their use of infrared technology is "patently ridiculous" as evidenced by Mr. Ebersole's deposition testimony that the motion detectors were not and could not have been marketed as heat detectors. (*Id.*).  USLIC further supports its position by noting that the questions completed by plaintiff Julie Muncy on the insurance application form were exclusively concerned with fire hazards, not burglary.  Additionally, USLIC cites to Ms. Gorski's deposition testimony as parole evidence showing that the motion detectors at the Divide Carry Out did not qualify as "heat detectors" because the intent of the policy's requirement for smoke or heat detection units is to ensure the existence of fire safeguard devices at the insured premises. (*Id.* at 7-8).

The primary issue presented by the parties' coverage dispute is narrow: do the motion protectors used at the Divide Carry Out qualify as "heat detectors" under the insurance policy?  If so, then USLIC's failure to cover plaintiffs' fire loss amounts to a breach of contract absent a prior breach by plaintiffs.  In order to resolve this issue, the Court must turn to Ohio contract law. *See U.S. v. A.C. Strip*, 868 F.2d 181, 184 (6th Cir. 1989) (citing *Celina Mut. Ins. Co. v. Sadler*, 217 N.E.2d 255 (Ohio Ct. App. 1966)) (holding that insurance policies issued in Ohio are governed by Ohio law).

"The interpretation of an insurance contract is a question of law for the Court." *Medpace, Inc. v. Darwin Select Ins. Co.*, 13 F. Supp.3d 839, 843-44 (S.D. Ohio 2014) (citing *Skinner v. Guarantee Trust Life Ins. Co.*, 813 F. Supp.2d 865, 868 (S.D. Ohio 2011)).  The

Court's goal in construing an insurance policy "is to ascertain the intent of the parties." *Bondex*

*Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669, 677 (6th Cir. 2011) (quoting *Chicago*

*Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E.2d 955, 959 (Ohio 1999)).  "If a contract is

clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be

determined." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio

1995) (quoting *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio

St.3d 321, 322 (Ohio 1984)).  The meaning of undefined and unambiguous contractual terms

must be gleaned from the parties' intent as expressed in the four corners of the contract; the

Court may not look to parol evidence to construe unambiguous contractual terms. *See Potti v.*

*Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir. 1991). *See also Karabin v. State*

*Auto. Mut. Ins. Co.*, 462 N.E.2d 403, 406 (Ohio 1984) (citing *Travelers Indem. Co. v. Reddick*,

308 N.E.2d 454 (Ohio 1974)) ("When the language of an insurance policy has a plain and

ordinary meaning, it is unnecessary and impermissible for [the] court to resort to construction of

that language.").  "The mere absence of a definition in an insurance contract does not make the

meaning of the term ambiguous" and such undefined terms are to be given their plain and

ordinary meaning. *Guman Bros. Farm*, 652 N.E.2d at 686 (citing *Miller v. Marrocco*, 504

N.E.2d 67, 69 (Ohio 1986)). *See also Bondex Int'l*, 667 F.3d at 677 (citing *Cincinnati Indem.*

*Co. v. Martin*, 710 N.E.2d 677, 679 (Ohio 1999); *Monticello Ins. Co. v. Hale*, 114 F. App'x 198,

201 (6th Cir. 2004)).  In interpreting insurance policies, courts may not look to extraneous

documents such as applications for coverage unless the policy expressly and unequivocally

incorporates them on its face. *See Jacubenta v. Cadillac Ranch*, No. 98750, 2013 WL 655178, at

*2 (Ohio Ct. App. Feb. 21, 2013) (citing *Allstate Ins. Co. v. Boggs*, 271 N.E.2d 855 (Ohio 1971))

("For an insurance application to be incorporated by reference in an insurance policy, the

11

incorporating language must be unequivocal and appear on the fact of the policy ***.").

"Under Ohio law, insurance companies bear the burden of demonstrating that an insurance claim falls within an exclusion to coverage." *Bondex Intern.*, 667 F.3d at 677. "Until and unless an insurer can establish that the claim falls solely and exclusively within the scope of the exclusion, it may not avoid its coverage obligations under the policy." *Encore Receivable Mgmt., Inc. v. Ace Property and Cas. Ins. Co.*, No. 1:12-cv-297, 2013 WL 3354576, at *5 (S.D. Ohio July 3, 2013) (citing *City of Sandusky v. Coregis Ins. Co.*, 192 F. App'x 355, 362-63 (6th Cir. 2006). Lastly, it is well-established that under "Ohio law, an undefined exclusionary term must be narrowly construed against the insurer." *Medpace*, 13 F. Supp.3d at 844 (citation and quotations omitted).

Here, the term "heat detector" appears on only one page of the lengthy insurance policy - the Protective Devices or Services Provisions form quoted above. *See* Doc. 37, Ex. 7 at 57 ("You are required to have and maintain . . . [f]unctioning and operational smoke/heat detectors. . . ."). There is no definition for or other reference to the term "heat detector" in the policy. Accordingly, the Court must give the term its plain and ordinary meaning. *Guman Bros. Farm*, 652 N.E.2d at 686 (citing *Miller*, 504 N.E.2d at 69).

Merriam-Webster defines "heat" as "the state of a body or of matter that is perceived as opposed to cold and is characterized by elevation of temperature: a condition of being hot" and a "detector" as "one that detects." *See* http://unabridged.merri am-webster.com/unabridged (last visited June 8, 2015). The combination of the words "heat" and "detector," as defined, makes a phrase that is essentially synonymous with "something that detects heat."[5] Thus, the issue before the Court is whether the motion detectors at the Divide Carry Out were devices that detected

---

[5]Notably, this is consistent with the testimony of USLIC's corporate representative, Ms. Gorski, that a "heat detector" is "something that detects heat." (Doc. 35 at 58, Deposition of Ms. Gorski).

heat.

There is a genuine issue of fact as to whether the motion detectors were "heat detectors" within the meaning of the insurance contract. As detailed above, Mr. Ebersole's affidavit, submitted by plaintiffs, explains that the motion detectors worked by using infrared technology to "detect a difference in temperature between various objects in its field of view." *See* Doc. 22 at 7. Mr. Ebersole further determined within the bounds of reasonable engineering certainty that these motion detectors "react to and sense heat." *See id.* at 8. Likewise, Mr. Ebersole testified that the motion detectors at the Divide Carry Out detect the heat from a fire by reacting to "infrared rays . . . heat waves. They react to that, and as such, they are a heat detector."[6] (Doc. 29 at 10, 22, Deposition of Mr. Ebersole).

USLIC has submitted the affidavit of David E. Jansing, a Senior Investigator employed by Unified Investigations and Sciences, Inc. who specializes in determining the cause and origin of fires. *See* Doc. 26. Mr. Jansing attests that he examined the alarm system at the Divide Carry Out following the November 2011 fire and that it "consisted of a key pad, motion detectors and a panic button." (Doc. 26, ¶ 5). Mr. Jansing further attests that "[t]here were no smoke or heat detectors at the Divide Carry Out at the time of [his] inspection following the November 22, 2011 fire." (*Id.*, ¶ 6). Implicit in Mr. Jansing's opinion is his conclusion that the motion detectors he observed at the Divide Carry Out are not "heat detectors." Because the evidence

---

[6]To the extent USLIC contends that Mr. Ebersole conceded "that the motion detectors . . . were not and could not be marketed as 'heat detectors,'" *see* Doc. 28 at 7, they do not cite to the portion of Mr. Ebersole's deposition transcript containing this purported concession. Upon review of this deposition testimony, the Court concludes that USLIC's characterization of Mr. Ebersole's deposition testimony is inaccurate. Mr. Ebersole, a member of the National Fire Protection Association (NFPA), testified that the Rokonet COSMOS DT motion detectors used at the Divide Carry Out were not listed by the manufacturer for fire detection purposes or did not qualify as such under NFPA guidelines; he did not provide any testimony as to the viability of marketing the Rokonet COSMOS DT motion detectors as "heat detectors." *See* Doc. 29 at 18-19. Mr. Ebersole repeatedly clarified, however, that because the motion detectors use infrared waves to detect heat, their microprocessors could be programmed to allow them to serve as part of a fire alarm system. *See generally id.* at 21-25.

from Mr. Ebersole and Mr. Jansing conflicts on a critical issue to this case, there is a genuine dispute of material fact for the jury such that granting summary judgment in favor of either party is inappropriate.

USLIC argues that adopting Mr. Ebersole's conclusion and plaintiffs' position that the motion detectors qualify as "heat detectors" under the policy runs counter to the purpose of the policy which was to ensure the existence of fire detection and prevention devices at the Divide Carry Out. USLIC notes that the relevant provisions of the policy's Protective Safeguard endorsement relate exclusively with fires, "not burglary or trespassing for which a motion detector would be used." (Doc. 28 at 7). USLIC further asserts that "[p]laintiff could just as easily have argued a thermometer in the cooler is a 'heat detector', but that plainly would not satisfy the parties' intent in requiring 'heat detectors' to protect against fires. Neither does a motion detector." (*Id*. at 8). In support, USLIC cites to Ms. Gorski's deposition testimony that the intent of requiring heat or smoke detectors relates to fires and the insurance application completed by Julie Muncy which contains eight questions under the "Property" heading all relating to fire concerns, such as whether the property has proper electrical wiring, functioning smoke or heat detectors, and operational fire extinguishers. (Doc. 28 at 7) (citing Doc. 35; Doc. 37, Ex. 3 at 2). As the term "heat detector" is not ambiguous, the Court may not consider parol evidence such as Ms. Gorski's testimony in interpreting the insurance policy, but must glean the parties' intent from the four corners of contract.[7] *See Potti*, 938 F.2d at 647. Nor may the Court consider the application form completed by Julie Muncy as USLIC has not established that it is

---

[7]Notably, even if the Court found the term "heat detector" was ambiguous, the outcome would remain the same as the Court must construe terms "reasonably susceptible of more than one interpretation . . . strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988). *See also Thompson v. Preferred Risk Mut. Ins. Co.*, 513 N.E.2d 733, 736 (Ohio 1987) (citing cases) ("Assuming *arguendo* that the policy terms are ambiguous, it is beyond question that any ambiguity will be resolved in favor of the insured.")

part of the insurance policy and the policy does not unequivocally incorporate the application on its face. *See Jacubenta*, 2013 WL 655178, at *2 (quoting *Boggs*, 271 N.E.2d at 857) (insurance applications are not considered part of the insurance policy unless the policy contains express and unequivocal language on its face incorporating the application). *See also* Doc. 37, Ex. 7 at 2-4, 57-89 (the policy expressly provides that the policy declarations, common policy conditions, coverage part declarations, coverage part coverage form(s), and forms and endorsements form a part of the complete policy; there is no such incorporation of the application form). In any event, even if the Court were permitted to consider this evidence, it would not alter the outcome of this matter as the conflicting expert opinions from Mr. Ebersole and Mr. Jansing create a genuine issue of material fact that requires resolution by a jury.

      C. <u>Whether USLIC is entitled to deny coverage for plaintiffs' purported failure to "maintain" the motion detectors</u>.

USLIC argues that even if the motion detectors qualify as "heat detectors" under the insurance policy, summary judgment should still be granted in its favor because "the motion detectors did not function or operate to detect the fire at the Divide Carry Out and therefore did not satisfy the contract requirement that the heat detectors be 'functioning and operational.'" (Doc. 28 at 8 n.1).

The Protective Devices and Services Provision of the insurance policy requires plaintiffs to "have and **maintain** . . . [f]unctioning and operational smoke/heat detectors in all units or occupancies." (Doc. 37, Ex. 7 at 57) (emphasis added). This provision further provides that USLIC "will not pay for loss or damage caused by or resulting from fire if, prior to the fire, [the insured]:

      p. Knew of any suspension or impairment in [the smoke/heat detectors] and failed to notify [USLIC] of that fact; or

       q. Failed to **maintain** [the smoke/heat detectors], and over which [the insured] had control, in complete working order.

(Doc. 37, Ex. 7 at 58) (emphasis added).

      In support of its claim that it is entitled to summary judgment because plaintiffs failed to maintain the motion detectors in complete working order and were therefore not compliant with Paragraph (q)[8] of the Protective Devices and Services Provision of the insurance policy, USLIC cites to Julie Muncy's deposition testimony that there were three break-ins at the Divide Carry Out; that the security system failed to notify them on all three occasions; and that Tri-State Security Systems came to the Divide Carry Out on each occasion to "see why their systems failed." (Doc. 28 at 8 n.1) (citing Doc. 27 at 19-20, Deposition of Julie Muncy).

      "Under Ohio law, insurance companies bear the burden of demonstrating that an insurance claim falls within an exclusion to coverage." *Bondex Intern.*, 667 F.3d at 677. "Until and unless an insurer can establish that the claim falls solely and exclusively within the scope of the exclusion, it may not avoid its coverage obligations under the policy." *Encore Receivable Mgmt., Inc. v. Ace Property and Cas. Ins. Co.*, No. 1:12-cv-297, 2013 WL 3354576, at *5 (S.D. Ohio July 3, 2013) (citing *City of Sandusky v. Coregis Ins. Co.*, 192 F. App'x 355, 362-63 (6th Cir. 2006)).

      The deposition testimony cited by USLIC does not establish as a matter of law that plaintiffs breached their obligations under the insurance policy and are therefore not entitled to coverage for their fire loss. USLIC's argument ignores Julie Muncy's prior testimony that the motion detectors were previously going off at night because they were detecting the heat from the store's furnace, which indicates that the detectors were functioning. *See* Doc. 27 at 15, 18-19, 31-32. Julie Muncy's testimony also indicates that plaintiffs were complying with their

---

[8]USLIC does not argue that plaintiffs failed to comply with Paragraph (p) of the Protective Devices and Services Provision of the insurance policy.

contractual obligations as they had the system serviced by Tri-State Security Systems on several occasions in response to the false alarms and the system's failure to detect the three break-ins. Moreover, USLIC's argument that Julie Muncy knew the security system was not operational by virtue of past false alarms presupposes that Julie Muncy knew the detectors were not operational on the day of the fire, and USLIC does not cite to any evidence in support of this position. Moreover, USLIC's assertion is inconsistent with Ms. Muncy's testimony that she had the security system serviced on those occasions where it failed or set off false alarms. *See* Doc. 27 at 15, 19-20. The evidence before the Court shows that the security system at the Divide Carry Out had a history of malfunctioning, including failing to detect the fire that forms the basis of this lawsuit. However, there is also evidence that Julie Muncy had the system serviced on these occasions such that she would have no reason to know that it was not functioning as intended on the night at issue. Whether the security system at the Divide Carry Out was operational and functioning on the night of the fire is a genuine issue of material fact that must be resolved by a jury. Consequently, summary judgment is precluded on the issue of whether plaintiffs were in compliance with their contractual obligations as set forth in Paragraph (q) of the insurance policy's exclusionary provisions. *See* Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322; *Anderson*, 477 U.S. at 247.

As there remain material facts in dispute regarding the application of the exclusionary provisions, the Court declines to address the parties' arguments regarding the meaning of the word "maintain" in these provisions. *See* Doc. 24 at 12-16 (plaintiffs argue the term "maintain" as used in the Protective Devices and Services Provision of the insurance policy is ambiguous and must therefore be construed narrowly and in their favor); Doc. 28 at 8-10 (USLIC argues that the term "maintain" is not ambiguous but means "to have," and that the Court should find

plaintiffs breached the insurance contract by failing to have functional and operational smoke or heat detectors at the Divide Carry Out).  Even if the term "maintain" means "to have" as USLIC argues, there are still genuine issues of fact as to whether plaintiffs had a heat detector on the premises as discussed above.  The Court further declines to address the parties' arguments regarding plaintiffs' claim that USLIC is estopped from denying coverage for the fire loss under Paragraphs (p) and (q) as this issue will necessarily be rendered moot in the event the trier of fact finds that the motion detectors qualify as "heat detectors" under the policy or that the plaintiffs were in compliance with these contractual safeguard provisions.  Likewise, plaintiffs' request that the Court exercise its equitable jurisdiction to reform the contract is premature absent a finding on their compliance with the policy's safeguard provisions.

**IV. Conclusion**

For the reasons stated above, the undersigned **RECOMMENDS** that (1) USLIC's motion to dismiss plaintiff Stephen Muncy's claims against it for lack of standing (Doc. 28) be **GRANTED**; and (2) the parties' motions for summary judgment (Docs. 24, 28) be **DENIED** in all other respects as there are material facts in dispute that must be resolved by the trier of fact.

6/18/15
Date

Karen L. Litkovitz
United States Magistrate Judge

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JULIE MUNCY, *et al.*,
     Plaintiffs,

     vs.

UNITED STATES LIABILITY,
INSURANCE COMPANY,
     Defendant.

Case No. 1:13-cv-830

Dlott, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).