UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JULIE MUNCY,                                           Case No. 1:13-cv-830
          Plaintiff,                                   Dlott, J.
                                                       Litkovitz, M.J.
     vs.

UNITED STATES LIABILITY                                **REPORT AND**
INSURANCE COMPANY,                                     **RECOMMENDATION**
          Defendant.

Plaintiff Julie Muncy, doing business as Divide Carry Out, brings this diversity action

pursuant to 28 U.S.C. § 1332 against defendant United States Liability Insurance Company

("USLIC"), alleging Ohio state law claims of breach of contract, lack of good faith, reasonable

expectations of coverage, and waiver-promissory estoppel-equitable estoppel, and seeking

declaratory relief or, alternatively, reformation of her insurance contract with USLIC.[1]  (Doc.

18).  This matter is before the Court on the plaintiff's renewed motion for summary judgment on

coverage (Doc. 56), defendant's memorandum in opposition (Doc. 60), and plaintiff's reply brief

(Doc. 61).

## I. Background

The Court previously denied the parties' cross-motions for summary judgment, finding

that there are material facts in dispute that must be resolved by the trier of fact.  (*See* Doc. 46 at

18; Doc. 52).  Relevant to the instant motion, plaintiff purchased the Divide Carry Out, a small

convenience store business in Portsmouth, Ohio in 2008.  Plaintiff retained the prior owner's

security system, which included a panic button, keypad, and motion detectors.  On May 17,

2011, plaintiff signed an insurance application seeking coverage from USLIC for the Divide

---

[1] The Court previously granted defendant's motion to dismiss plaintiff Stephen Muncy's identical claims against
USLIC, finding that he lacked standing to sue to enforce the insurance policy at issue.  (*See* Doc. 46 at 6-8, 18; Doc.
52).

Carry Out. The insurance application that plaintiff submitted represented that the business had functioning and operational smoke and/or heat detectors.

On May 19, 2011, USLIC issued an insurance policy to plaintiff for the period of May 17, 2011 to May 17, 2012. The policy requires the insured to "have and maintain . . . [f]unctioning and operational smoke/heat detectors. . . ." (Protective Devices or Services Provisions, Form BP-115 (07-08), Doc. 37, Exh. 7 at 57). The policy also includes exclusionary terms that provide that USLIC "will not pay for loss or damage caused by or resulting from fire if, prior to the fire, [the insured]:

> p. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
>
> q. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

(*Id.* at 58). The Schedule referenced contains the symbol "P-5," which is described as "Functioning and operational smoke/heat detectors in all units or occupancies." (*Id.* at 57).

A fire occurred at the Divide Carry Out in November 2011. Plaintiff subsequently filed a claim with USLIC. On August 12, 2013, USLIC denied the claim for damages resulting from the fire loss due to plaintiffs' alleged "failure to comply with the policy's 'Protective Safeguards Endorsement' (BP-115 (07-08)) and the lack of functioning and operational smoke/heat detectors in the insured premises." (August 12, 2013 USLIC Denial Letter, Doc. 37, Exh. 8 at 1-2).

In denying the parties' cross-motions for summary judgment, the Court first concluded that there is a genuine issue of fact as to whether the motion detectors installed in plaintiff's business were "heat detectors" within the meaning of the insurance contract. (Doc. 46 at 13; Doc. 52). The undersigned noted that plaintiff's engineering expert Daryl Ebersole, P.E., indicated in the engineering report attached to his affidavit that the motion detectors worked by using infrared technology to "detect a difference in temperature between various objects in its

2

field of view." (Doc. 46 at 13) (citing Doc. 22 at 7). Mr. Ebersole further determined within the bounds of reasonable engineering certainty that these motion detectors "react to and sense heat." (*Id.*) (citing Doc. 22 at 8). Likewise, Mr. Ebersole testified that the motion detectors at plaintiff's business detect the heat from a fire by reacting to "infrared rays . . . heat waves. They react to that, and as such, they are a heat detector." (*Id.*) (citing Deposition of Mr. Ebersole, Doc. 29 at 10, 22).

The undersigned further noted that defendant's fire investigator, David Jansing, who specializes in determining the cause and origin of fires, attests in his affidavit that the alarm system at the business "consisted of a key pad, motion detectors and a panic button." (*Id.*) (citing Affidavit of Mr. Jansing, Doc. 26 at ¶ 5). Mr. Jansing further attests that "[t]here were no smoke or heat detectors at the Divide Carry Out at the time of [his] inspection following the . . . fire." (*Id.*) (citing Doc. 26 at ¶ 6). The undersigned determined that "[i]mplicit in Mr. Jansing's opinion is his conclusion that the motion detectors he observed at the Divide Carry Out are not 'heat detectors.'" (*Id.*). Accordingly, the Court concluded that given the conflicting evidence from Mr. Ebersole and Mr. Jansing, there is a genuine dispute of material fact for the jury to decide concerning whether the motion detectors were heat detectors within the meaning of the insurance contract. (*Id.* at 13-14; Doc. 52).

Second, the Court determined that summary judgment was not appropriate on USLIC's claim that even if the motion detectors qualify as "heat detectors" under the insurance policy, it was entitled to deny coverage because of plaintiff's purported failure to "maintain" the motion detectors. (Doc. 46 at 15-17; Doc. 52). Specifically, the undersigned noted that evidence before the Court shows that the motion detectors "had a history of malfunctioning, including failing to detect the fire that forms the basis of this lawsuit"; however, other evidence shows that plaintiff "had the system serviced on these occasions such that she would have no reason to know that it

was not functioning as intended on the night at issue." (Doc. 46 at 17). Accordingly, the Court concluded that summary judgment is precluded as to whether plaintiff was in compliance with her contractual obligations as set forth in paragraph (q) of the insurance policy's exclusionary provisions because "[w]hether the security system at the Divide Carry Out was operational and functioning on the night of the fire is a genuine issue of material fact that must be resolved by a jury." (*Id.*; Doc. 52).

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield,* 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the non-moving party to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original). To meet that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## III. Resolution

Plaintiff indicates that she deposed Mr. Jansing, defendant's fire investigator, in September 2015 after the Court denied the cross-motions for summary judgment. (Doc. 56 at 2). Based on this new evidence, the Court will exercise its discretion and consider plaintiff's "second [dispositive] motion concerning the same subject matter and seeking the same relief." *Snyder v. Lady Slings the Booze, LLC*, No. 3:12-cv-659, 2014 WL 4066780. at *2 (W.D. Ky. Aug. 18, 2014). *See also Wechsler v. Hunt Health Sys., Ltd.*, 198 F. Supp.2d 508, 514 (S.D.N.Y. 2002) ("A party may renew its motion for summary judgment as long as it is supported by new material.").

Plaintiff argues that Mr. Jansing's deposition demonstrates there is no factual dispute between the experts concerning whether the motion detectors in plaintiff's business were "heat detectors" based on the following testimony: (1) he is not an engineer and has no training in how motion detectors work; (2) he was unable to agree or disagree with Mr. Ebersole's opinions

5

because "[t]hat's out of [his] area of expertise"; (3) when he referred to "heat detectors" in his affidavit, he was not referring to the motion detectors but to devices approved for use as heat detectors by the National Fire Protection Association; and (4) he "was not at a point where [he] can disagree with [Mr. Ebersole] on anything because it's out of [his] area of expertise." (Doc. 56 at 2-3). Plaintiff contends that because she had a "heat detector" the exclusion for "the lack of functioning and operational smoke/heat detectors in the insured premises" does not apply. (*Id.* at 3). Plaintiff argues that because the term "heat detector" must be given its "popular and ordinary meaning when construed from the viewpoint of a layperson," there is no factual dispute for the jury to resolve concerning insurance coverage, and trial should proceed only on the issues of damages and whether defendant lacked good faith. (*Id.* at 3-4).

Defendant responds that Mr. Jansing does not dispute that plaintiff's motion detector "measures heat to detect motion," but that "[h]e does disagree that the device is a heat detector." (Doc. 60 at 1). Defendant argues that plaintiff's renewed motion must be denied because plaintiff has not addressed the Court's conclusion that an issue of fact exists as to whether the motion detector was "functioning and operational." (*Id.* at 2).

In reply, plaintiff argues that it is undisputed that the motion detector is a heat detector because Mr. Ebersole opined that motion detectors detect heat, and Mr. Jansing does not dispute that opinion "because he has no training in how motion detectors work." (Doc. 61 at 1). Plaintiff contends that defendant failed to meet its burden of proving that the motion detector was not functioning at the time of the fire. (*Id.* at 2). Plaintiff asserts that Mr. Jansing's deposition testimony demonstrates that there was no evidence that the motion detectors should have alerted based on their location within the business. (*See id.* at 2-3). Plaintiff contends that if the Court finds that it is not entitled to legal relief, the Court should use its equitable power to reform the policy to provide coverage for plaintiff's loss. (*See id.* at 3-4).

For the reasons set forth in the undersigned's prior Report and Recommendation (Doc. 46), plaintiff's renewed motion for summary judgment should be denied. In his deposition, Mr. Jansing testified that he was unable to express an opinion about the engineering conclusions contained in Mr. Ebersole's engineering report because those conclusions were outside Mr. Jansing's area of expertise. (*See* Deposition of David Jansing, Doc. 55 at 23-25).[2] However, Mr. Jansing testified that "to me [the motion detectors] are not heat detectors." (*Id.* at 32). Mr. Jansing's conclusion that motion detectors are "not the same thing as heat detectors" was based on his training, education, and 44 years of experience in the fire service. (*Id.* at 37).

This new deposition testimony does not alter the undersigned's conclusion that a factual issue exists for the jury to resolve as to whether the motion detectors in plaintiff's business were heat detectors within the meaning of the insurance policy. While Mr. Jansing testified that he could not express an opinion about Mr. Ebersole's engineering conclusions, he still believes— based on his own training, education, and experience in the field of fire safety and investigation—that the motion detectors at issue are not "heat detectors." Thus, a factual dispute still exists for the jury to resolve, and summary judgment is not appropriate. Further, Mr. Jansing's deposition testimony does not alter the undersigned's earlier conclusion that whether the motion detector was operational and functioning on the night of the fire is a genuine issue of material fact that must be resolved by the jury.

---

[2] References to this document are to the deposition's internal page numbering, not the page numbers provided by CM/ECF.

## IV. Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that plaintiff's renewed motion for summary judgment (Doc. 56) be **DENIED**.

Date: _12/7/15_

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JULIE MUNCY,                                   Case No: 1:13-cv-830
     Plaintiff,                          Dlott, J.
                                        Litkovitz, M.J.

    vs.

UNITED STATES LIABILITY
INSURANCE COMPANY,
     Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

9